UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

PHILIP VASTO, ZAO YANG, ALEX TORRES, and
XIAOJ ZHENG, *individually and on behalf of all others
similarly situated*,

Plaintiffs,

-v-

CREDICO (USA) LLC, CROMEX INC., JESSE YOUNG,
AND MEIXI XU,

Defendants.

------------------------------------------------------------------X

15 Civ. 9298 (PAE)

OPINION & ORDER

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:    8 3 16
```

PAUL A. ENGELMAYER, District Judge:

Plaintiffs Philip Vasto, Zao Yang, Alex Torres, and Xiaoj Zheng (collectively,

"plaintiffs") bring this action on behalf of themselves and similarly situated persons, alleging

violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, New York Labor

Law ("NYLL"), N.Y. Lab. Law Article 6 §§ 190 *et seq.*, and Article 19 §§ 650 *et seq.*, the

Arizona Wage Act ("AWA"), Ariz. Rev. Stat. §§ 23-350 *et seq.*, and the Arizona Minimum

Wage Act ("AMWA"), Ariz. Rev. Stat. §§ 23-362 *et seq.* Plaintiffs allege that defendants

Credico (USA) LLC ("Credico"), CroMex Inc. ("CroMex"), Jesse Young, and Meixi Xu (also

known as "Corona") (collectively, "defendants") maintained unlawful employment practices,

including misclassifying their employees as independent contractors and thereby failing to pay

minimum wage or overtime compensation at the statutorily required rates for employees.

Before the Court is Young's motion to dismiss plaintiffs' claims against him, under

Federal Rule of Civil Procedure 12(b)(6), on the ground that the First Amended Complaint

("FAC") does not plausibly plead that he was plaintiffs' "employer" for purposes of the FLSA or the New York and Arizona wage statutes. For the reasons that follow, that motion is granted.

## I.      Background

### A.      Factual Allegations[1]

Credico is a Delaware corporation headquartered in Chicago, Illinois. FAC ¶ 22. It provides face-to-face sales and marketing services to companies in, among others, the telecommunications, financial services, and energy industries, and to charitable organizations. *Id.* ¶ 26. Its clients include Fortune 500 companies, such as Verizon Communications Inc. and Sprint Nextel Corp. *Id.* ¶ 27. Young is Credico's President. *Id.* ¶ 24.

Credico serves its clients through a nationwide network of more than 100 independent sales offices ("ISOs"). *Id.* ¶¶ 1, 28. Each ISO employs workers ("agents") to engage in face-to-face marketing for one or more of Credico's clients. *See id.* ¶¶ 1, 28, 30, 42–43. The agents' primary duty is to gather applications from consumers seeking to enroll in one or more programs offered by Credico's client. *See id.* ¶¶ 1, 42–43.

The FAC alleges that Credico exercises control over the day-to-day operations of all ISOs in its network. *Id.* ¶ 1. Most significantly, it alleges, Credico requires each of these ISOs to implement Credico's "Management Training Program." *Id.* ¶ 11. That program, the FAC alleges, dictates the manner in which ISOs train agents, the manner in which agents can approach potential customers, the number of hours that agents must work each week, and the manner in which agents are to be paid and classified. *Id.* ¶¶ 8, 11, 31–32.[2]

---

[1] The facts related herein are drawn from the FAC. Dkt. 6 ("FAC"). The Court assumes all well-pled facts to be true, drawing all reasonable inferences in plaintiffs' favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[2] The FAC's allegations as to Credico and its Management Training Program are made "upon information and belief."

CroMex is an ISO headquartered in New York City. *Id.* ¶¶ 23, 33. CroMex operates its own network of companies which perform marketing services for Credico's clients in New York, Michigan, Maryland, Arizona, and Nevada. *Id.* ¶ 35. The FAC alleges that Credico's Regional Sales Director, Tommy Smith, works out of CroMex's New York City office and has exercised his authority to terminate CroMex's agents. *See id.* ¶¶ 1, 14, 38, 41.[3] Corona is CroMex's owner and manager. *Id.* ¶ 25. She supervises the agents who perform marketing services for Credico's clients. *Id.*

At various points in 2015, the four named plaintiffs worked for CroMex in New York City and Phoenix, Arizona, promoting Credico's clients' cell phone and wireless service plans. *Id.* ¶¶ 15–18, 58.

The FAC alleges that as a "precondition" of their work with defendants, plaintiffs were required to participate in a training period for which they were not paid. *Id.* ¶¶ 2, 46–51. Once they completed training, the FAC alleges, plaintiffs were required to work 12 hours per day, Monday through Saturday. *Id.* ¶ 52. Each day, the FAC alleges, plaintiffs were required to follow a strict schedule, consisting of: (1) morning team meetings and training sessions; (2) "[r]ide-out[s]" in the field, where agents signed up new customers for Credico's clients; and (3) evening meetings and training sessions. *Id.* ¶¶ 53–56. The FAC alleges that defendants set weekly sales targets for plaintiffs and tracked their sales numbers on a weekly basis. *Id.* ¶ 56.

Given the "extensive control" defendants exercised over them, the FAC alleges, plaintiffs qualified as employees and were "jointly employed" by each of the defendants. *Id.* ¶¶ 1, 44–45. Therefore, the FAC claims, plaintiffs were entitled to minimum wage and overtime compensation for hours worked in excess of 40 hours per week. *See id.* ¶¶ 73–74, 77, 86, 97,

---

[3] The FAC alleges that Smith is "controlled by [Credico's] headquarters." FAC ¶ 14.

106.  However, the FAC alleges, plaintiffs were misclassified as independent contractors and thus paid solely on a commission basis:  They were paid $10 for each qualified customer they signed up for the services of one of Credico's clients.  *Id.* ¶¶ 2, 8, 57.

As a result of this practice, the FAC alleges, plaintiffs "routinely earn[ed] an hourly rate that [was] less than the federal minimum wage, New York minimum wage, and Arizona minimum wage."  *Id.* ¶ 59.  And, it alleges, plaintiffs were never paid overtime compensation, despite typically working more than 72 hours per week.  *Id.* ¶ 60.  On this basis, the FAC brings claims on behalf of all plaintiffs for overtime and minimum wage violations under the FLSA, NYLL, AMWA, and AWA.  *Id.* ¶¶ 73–74, 77, 86, 97, 106.

The FAC also brings claims on behalf of Vasto and Yang for retaliation in violation of the FLSA and NYLL.  *See id.* ¶¶ 75–76, 95–96.  It alleges that, during his employment, each of those plaintiffs told Corona that he wished to "take a different approach to signing up new customers," because he had not found defendants' required sales methods to be effective.  *See id.* ¶¶ 63–64, 70–71.  When Corona denied this request, the FAC alleges, each plaintiff told her that he "did not feel he was properly classified as an independent contractor, because he did not have the ability to choose his own methods for making sales."  *Id.* ¶¶ 64, 71.  Subsequently, the FAC claims, each plaintiff was reprimanded for complaining, and terminated by Smith (in Vasto's case) or Corona (in Yang's case) "in retaliation for voicing and acting on his concerns about his misclassification as an independent contractor."  *Id.* ¶¶ 66, 72.

## B.  Procedural History

On July 27, 2015, plaintiffs filed a complaint in the Northern District of Illinois, bringing claims, on behalf of themselves and other similarly situated employees, against defendants under the FLSA, NYLL, AMWA, and AWA.  Dkt. 1.  On July 30, 2015, plaintiffs filed the FAC.  Dkt. 6.  On September 28, 2015, Credico answered.  Dkt. 26.

On November 9, 2015, the case was transferred to this District. Dkt. 46. On December 22, 2015, plaintiffs moved for conditional certification. Dkt. 62.

On January 11, 2016, CroMex and Corona answered. Dkts. 77, 78. On February 4, 2016, Credico filed an amended answer. Dkt. 85.

On March 25, 2016, Young moved to dismiss the FAC against him, Dkt. 106, and filed a memorandum of law, Dkt. 107 ("Young Br."), and a declaration by defense counsel, Dkt. 108, in support. On May 4, 2016, the Court directed plaintiffs to file, within 21 days of the Court's resolution of plaintiffs' motion for conditional certification, either an amended complaint or an opposition to Young's motion to dismiss. Dkt. 109.

On May 5, 2016, the Court granted plaintiffs' motion for conditional certification of a collective of all persons who conducted face-to-face marketing work for Credico and its subcontractor companies in the United States, while classified as independent contractors, at any point during the three years preceding the issuance of a court-appointed notice. Dkt. 113.

On May 26, 2016, plaintiffs filed a memorandum of law in opposition to Young's motion to dismiss. Dkt. 119 ("Pl. Br."). On June 2, 2016, Young replied. Dkt. 120 ("Young Reply Br.").

## II.    Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) (internal quotation marks omitted)).  However, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[R]ather, the complaint's *[f]actual* allegations must be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570) (internal quotation marks omitted) (emphasis in *Arista Records*).  A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

## III.   Discussion

Young's motion to dismiss turns on the question of whether the FAC adequately pleads that he was plaintiffs' "employer" as that term is defined by the FLSA, NYLL, AMWA, and AWA.

### A.     Legal Definition of "Employer"

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The Supreme Court has emphasized that this is an expansive definition with "striking breadth." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992).  Accordingly, "the Court has instructed that the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts,' determined by reference not to 'isolated factors, but rather upon the circumstances of the whole activity.'" *Barfield v.*

*N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961), and *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).  An individual may simultaneously have multiple "employers" for the purposes of the FLSA, in which case, "all joint employers are responsible, both individually and jointly, for compliance with all the applicable provisions of the [FLSA]."  29 C.F.R. § 791.2(a).

The Second Circuit has instructed that in applying the "economic reality" test, courts should consider a variety of factors, based on the "factual challenges posed by particular cases." *Barfield*, 537 F.3d at 142.  In the context of evaluating whether an individual official may be liable as an employer, the Second Circuit has applied a modified version of the "formal control" test articulated in *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984).  Under *Carter*, courts consider: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Id.* at 12 (quoting *Bonnette v. Calif. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)).[4]

In addition, in considering whether an individual official is liable as an employer, courts are also to consider two other factors.  *See Irizarry v. Catsimatidis*, 722 F.3d 99, 106–12 (2d Cir. 2013) (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 137–40 (2d Cir. 1999)).

---

[4] In evaluating claims of employer status arising in other contexts, the Second Circuit has also applied a "functional control" test, which considers factors that largely but incompletely overlap with those considered in the formal control test.  *See Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71–72 (2d Cir. 2003); *Barfield v. N.Y.C. Health & Hosp. Corp.*, 432 F. Supp. 2d 390, 392–93 (S.D.N.Y. 2006), *aff'd*, 537 F.3d 132 (2d Cir. 2008).

The first is the scope of the individual's "operational control" over "employment-related factors such as workplace conditions and operations, personnel, or compensation." *Id.* at 106, 109; *see id.* at 106–10.[5]  In assessing this factor, the Second Circuit has placed emphasis on the extent to which the individual (1) "exercised financial control over the company," and (2) gave instructions to subordinate managers on matters concerning employment practices.  *See id.* at 116 (citing *Herman*, 172 F.3d at 136–37, 140).  The Circuit has held that:

> [e]vidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate "employer" status.  Instead, to be an "employer," an individual defendant must possess control over a company's actual "operations" *in a manner that relates to a plaintiff's employment*.

*Id.* at 109 (emphasis added).

The second factor is the individual's "potential power," *i.e.*, the extent to which he has authority to control employees, even if he does not exercise it.  *Id.* at 110–11.  The Circuit has held that employer status "does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees."  *Herman*, 172 F.3d at 139.  Rather, "[c]ontrol may be restricted, or exercised only occasionally, . . . since such limitations on control do[] not diminish the significance of its existence."  *Id.* (alteration in original) (internal quotation marks and citation omitted).  However, the Circuit has emphasized that "the manifestation of, or, at the least, a clear delineation of an individual's power over employees is an important and telling factor in the 'economic reality' test."  *Irizarry*, 722 F.3d at 111.  "Ownership, or a stake in a company, is insufficient."  *Id.*  "[A] company owner, president,

---

[5] This consideration may "establish a higher threshold for individual liability than for corporate 'employer' status."  *Irizarry*, 722 F.3d at 109.

or stockholder must have at least some degree of involvement in the way the company interacts with employees to be a FLSA 'employer.'" *Id.* at 107.

These factors are not exclusive. As the Second Circuit has emphasized, the "economic reality" test gauges the "totality of the circumstances," *Barfield*, 537 F.3d at 141–42, and "any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." *Herman*, 172 F.3d at 139. "[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question." *Id.* (citing *Carter*, 735 F.2d at 12).[6]

The standard for employer status under the NYLL appears nearly if not wholly identical to that of the FLSA. *Compare* 29 U.S.C. § 203(d) ("'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee."), *with* N.Y. Lab. Law § 190(3) ("'Employer' includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."). "Neither the New York Court of Appeals nor the Second Circuit has decided whether the tests for 'employer' status are the same under the FLSA and the NYLL. However, district courts in this Circuit have consistently interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA." *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015) (internal quotation marks and citations omitted). Both parties adopt this interpretation in their briefs. *See* Young Br. 4 n.3; Pl. Br. 4.

---

[6] Circuit courts across the country have applied similar standards. *See, e.g.*, *Gray v. Powers*, 673 F.3d 352, 355–56 (5th Cir. 2012); *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009); *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir. 2007); *U.S. Dep't of Labor v. Cole Enters., Inc.*, 62 F.3d 775, 778–79 (6th Cir. 1995).

As for the Arizona wage statutes, the AMWA "looks to the standards of the FLSA" to determine whether there is an employer-employee relationship. *Martinez v. Ehrenberg Fire Dist.*, No. 14 Civ. 00299 (DGC), 2015 WL 3604191, at *2 (D. Ariz. June 8, 2015) (citing Ariz. Rev. Stat. § 23–362(D) ("[W]hether a person is an independent contractor or an employee shall be determined according to the standards of the federal Fair Labor Standards Act."); *see also id.* at *2–3 (applying the "economic reality" test to claims brought under the FLSA and AMWA). And the standard under the AWA is equally broad. *See* Ariz. Rev. Stat. § 23–350(3) (defining "employer" as "any individual, partnership, association, joint stock company, trust, [or] corporation . . . employing any person"). The parties do not address this statute in their briefs. The Court is aware of no authority holding that its definition of "employer" should be interpreted materially differently than its federal counterpart.

The Court, therefore, applies the economic reality analysis to plaintiffs' claims under each statute.

### B.      Analysis

Applying these standards, the FAC does not come close to pleading that Young was plaintiffs' employer under the FLSA or the New York and Arizona wage statutes.

As noted, plaintiffs bring claims against Credico; Young, Credico's President; CroMex, an ISO within the Credico network; and Corona, CroMex's owner and manager. The FAC contains a number of allegations regarding "defendants" as an undifferentiated collective. It alleges that: "[d]efendants have been operating as joint employers of [p]laintiffs[] and of all workers promoting [d]efendants' clients' cell phones and wireless service plans," FAC ¶ 1; "[d]efendants' workers are supervised closely by their agents[,] . . . instructed in the details of their job performance, the hours and location worked, and [ ] monitored and reviewed

frequently," *id.* ¶ 44; "[d]efendants set weekly sales targets for their workers, who can be terminated for failure to meet these goals," *id.*; and "[d]efendants' workers are paid solely on a commission basis," *id.* ¶ 57.

As to Young specifically, however, the FAC alleges only that he is "an adult resident of New York . . . [and] the president of Credico." *Id.* ¶ 24. This allegation does not approach the level of specificity required to plead employer status under the relevant statutes. As the Second Circuit held in *Irizarry*, an elevated title is "insufficient to establish that an individual is an 'employer.'" 722 F.3d at 111. Rather, a "company owner, president, or stockholder must have at least some degree of involvement in the way the company interacts with employees.'" *Id.* at 107. Here, the FAC does not plead any facts that would permit the Court to infer that Young had the requisite level of involvement.

As an initial matter, the FAC does not satisfy any of the *Carter* factors with respect to Young. It does not allege that Young (1) had the power to hire or fire agents, (2) supervised or controlled agents' work schedules or conditions of employment, (3) determined the rate and method of employment, or (4) maintained employment records. *See Carter*, 735 F.2d at 12. "Generally, corporate officers and owners held to be employers under the FLSA have had some direct contact with the plaintiff employee, such as personally supervising the employee's work, including determining the employee's day-to-day work schedules or tasks, signing the employee's paycheck or directly hiring the employees." *Tracy v. NVR, Inc. ("Tracy I")*, No. 04 Civ. 6541 (DGL) (MWP), 2009 WL 3153150, at *4 (W.D.N.Y. Sept. 30, 2009) (collecting cases), *report and recommendation adopted as modified*, 667 F. Supp. 2d 244 (W.D.N.Y. 2009); *accord Wolman v. Catholic Health Sys. of Long Island, Inc.*, 853 F. Supp. 2d 290, 299 (E.D.N.Y. 2012), *aff'd in part, rev'd in part on other grounds sub nom. Lundy v. Catholic Health Sys. of*

*Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013).  The FAC, however, does not contain a single allegation to that effect.

Equally significant, the FAC does not plead any facts that would permit the Court to infer that Young had "operational control" over "employment-related factors such as workplace conditions and operations, personnel, or compensation."  *Irizarry*, 722 F.3d at 109; *see, e.g.*, *Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) ("Kwon hardly was a distant corporate officer, with no role in setting the terms and conditions of employment for employees such as Moon.  To the contrary, Kwon played an intimate role in the day-to-day operations of the hotel.").  It does not allege that Young "exercised financial control" over Credico or any of its ISOs.  *See Herman*, 172 F.3d at 136, 140 (fact that defendant "was the only principal who had bank credit, [and therefore] exercised financial control over the company" was strong evidence of his "employer" status; *Donovan v. Grim Hotel Co*., 747 F.2d 966, 972 (5th Cir. 1984) (president qualified as employer because he was the "top man" of the hotel companies, "held their purse-strings[,] and guided their policies").  Nor does it allege that he possessed control over managerial staff or instructed them on matters concerning employment practices.  *See Herman*, 172 F.3d at 140 ("Although [defendant's] hiring involved mainly managerial staff, the fact that he hired individuals who were in charge of the [plaintiff] guards [was] a strong indication of control.").  Indeed, the FAC contains no allegations whatsoever as to the scope of Young's powers and duties as President.

Accordingly, although the FAC alleges (upon information and belief) that *Credico* "exercise[d] control over the day-to-day operations of the companies in its network," "determined to classify [agents] as independent contractors," and "created and implemented its 'Management Training Program,'" FAC ¶¶ 1, 8, 11, it supplies no basis for inferring that *Young*

played any role in devising or implementing those policies.  Similarly, although the FAC alleges

that Corona and Smith fired agents from CroMex, *id.* ¶¶ 1, 41, 72, in the absence of allegations

as to the relationship between Young and those lower-level managers, there is no basis for

inferring that he had any influence over their actions.

In essence, without pleading any facts that suggest Young enjoyed formal or operational

control over agents' employment, plaintiffs ask the Court to infer such authority based on his

status as Credico's President.  The Court rejects that bid.  Even if there were circumstances in

which an individual's control over workers could be plausibly inferred solely from his high-level

position within a company, this would not be one of those cases.  Courts have been especially

hesitant to infer status-based control where structural considerations—such as a company's

stratified or decentralized structure, public status, or expansive scale—cast doubt on the premise

that senior corporate officials enjoy authority over employment-related matters.[7]  That logic is

---

[7] *See, e.g.*, *Solis v. Velocity Exp., Inc.*, No. 09 Civ. 864 (MO), 2010 WL 2990293, at *6 (D. Or. July 26, 2010) ("In the absence of a direct relationship between the corporate officers' decisions and the FLSA violation at issue, courts have found that corporate officers in large publicly traded corporations did not become FLSA employers simply by virtue of their general authority over the company as a whole."); *Tracy I*, 2009 WL 3153150, at *4 ("Where the relationship between the putative employer and the plaintiff employee is more attenuated and the size of the corporation larger, employer liability may not be found."); *compare Tracy v. NVR, Inc. ("Tracy II")*, 667 F. Supp. 2d 244, 246–47 (W.D.N.Y. 2009) (refusing to infer, based solely on their job titles, that Board Chairman, CEO, and VP of Human Resources of "enormous, multi-billion dollar corporation scattered across hundreds of miles [ ] had and exercised sufficient control over [plaintiffs] to satisfy the economic reality test"), *with Leal v. Masonry Servs., Inc.*, No. 12 Civ. 588 (DLI), 2013 WL 550668, at *3 (E.D.N.Y. Feb. 12, 2013) ("[Allegations] that the Moving Defendants, in their capacity as owners and directors of construction businesses, . . . had the power to hire and terminate employees, control work schedules and conditions of employment, and set wages . . . appear plausible because they suggest, when viewed as a whole, a business enterprise of modest size and scope."), *and Wilk v. VIP Health Care Servs., Inc.*, No. 10 Civ. 5530 (ILG), 2012 WL 560738, at *9 (E.D.N.Y. Feb. 21, 2012) (noting that there was "no reason to question the plausibility" of plaintiff's allegations that company's owner/manager was authorized to make employment decisions, because "there [was] no allegation that [the company] was a massive enterprise with far-flung offices and a large number of employees").

persuasive here, where Credico operates a nationwide network of over 100 ISOs, some of which, such as CroMex, operate their own networks of sub-ISOs, which in turn directly employ the agents who perform marketing services for Credico's clients.

Indeed, the facts pled in the FAC indicate that key employment decisions were made at multiple levels of management within the Credico network. *Compare* FAC ¶ 1 ("Credico's Regional Sales Director, controlled by its headquarters, has exercised his authority to terminate a worker from CroMex."), *with id.* ¶¶ 71–72 (describing occasion on which Corona, CroMex's owner and manager, terminated an agent). Glaringly absent, however, are any factual allegations linking Young to such decisions.

Under these circumstances, the pleadings do not non-speculatively support an inference that Young "possessed the power to control the workers in question." *Herman*, 172 F.3d at 139. To hold otherwise "would create de facto liability for high-level corporate officers any time a corporation violated the FLSA." *Solis*, 2010 WL 2990293, at *8 (corporate officers not liable as "employers" under the FLSA where "control over the terms and conditions of employment was spread throughout the corporate organization and there [was] no evidence that [the individual defendants] personally made a decision that [could] be traced to the alleged FLSA violations"). The Second Circuit has flatly rejected such an outcome. *See Irizarry*, 722 F.3d at 107, 109, 111.

The cases on which plaintiffs rely are not to the contrary. In those cases, the plaintiffs did not base their claims against the individual defendants solely on their elevated status within the employer company. Rather, they alleged that the individual defendants—as distinct from any named corporate entities—personally participated in or condoned the alleged violations.

For instance, in *Winfield v. Babylon Beauty School of Smithtown Inc.*, 89 F. Supp. 3d 556, 569 (E.D.N.Y. 2015), plaintiffs alleged not only that the individual defendants were the owners,

officers, and/or directors of one or more of the beauty school defendants, but also that they "were ultimately responsible for the decision not to compensate students for working in the [b]eauty [s]chools' clinics."  Similarly, in *Sikiotis v. Vitesse Worldwide Chauffeured Services, Inc.*, 147 F. Supp. 3d 39, 47 (D. Conn. 2015), plaintiffs alleged that: (1) the individual defendant, who was the owner and president of the defendant company, "had the authority to set the hours of employment, hire and fire, maintain employment records, [ ] direct the work and [ ] determine the rate and method of payment of [plaintiff's] wages"; and (2) his "exercise of that authority was the direct cause of [the company's] failure to pay wages."[8]

By contrast, courts faced with factual allegations as sparse as those pled here have generally rejected claims of individual liability.  For instance, in *Bravo v. Eastpoint International, Inc.*, No. 99 Civ. 9474 (WK), 2001 WL 314622, at *1 (S.D.N.Y. Mar. 30, 2001), plaintiffs alleged that the "Donna Karan Defendants," which included Donna Karan in her personal capacity and a number of corporate entities, "controlled plaintiffs' wages and hours through establishing contract prices and dates of production," and "had a representative present in the factory at least once a day to monitor quality control."  The only allegation pertaining to Karan specifically, however, was that she was the "principle [sic] owner and chairperson" of the other Donna Karan defendants.  *Id.* at *2.  The court held that this "conclusory statement [was] by itself insufficient" to state a claim against Karan under the FLSA.  *Id.*  It rejected plaintiffs'

---

[8] *See also Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 207 (S.D.N.Y. 2014) ("[A]s to the individual franchisor defendants[,] . . . the FAC alleges that they 'determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.'" (citation omitted)); *cf. Apolinar v. Glob. Deli & Grocery, Inc.*, No. 12 Civ. 3446 (RJD), 2013 WL 5408122, at *4 (E.D.N.Y. Sept. 25, 2013) (allegations that corporate defendant's principal authorized company's pay policies and controlled terms and conditions of plaintiffs' work were sufficient to establish individual employer liability for purposes of unopposed default judgment motion).

effort to "lump [multiple defendants] together as one in the allegations . . . in the amended

complaint." *Id.* And it held that, because plaintiffs "allege[d] no fact which would tend to

establish [Karan's] power to control the plaintiff workers," they had not adequately pleaded that

she was their employer. *Id.*[9]

So, too, here. As in *Bravo*, the FAC here does not plead facts that would permit the

Court to plausibly infer that Young exercised—or even possessed—formal or operational control

over plaintiffs' employment conditions. Strikingly, it pleads *no* facts as to Young aside from his

executive status. That fact, without more, does not make Young an "employer" under the FLSA,

NYLL, AMWA, or AWA. The FAC's claims against Young, therefore, must be dismissed.

### C.    Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R.

Civ. P. 15(a)(2). It is "within the sound discretion of the district court to grant or deny leave to

amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Leave to

amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility

---

[9] *See also, e.g.*, *Coley v. Vannguard Urban Imp. Ass'n, Inc.*, No. 12 Civ. 5565 (PKC), 2014 WL 4793825, at *4–6 (E.D.N.Y. Sept. 24, 2014) (dismissing claims against Board Chairman where plaintiffs "allege[d] no facts other than [defendant's] status as a board member to support the conclusory allegation that he was responsible for making decisions concerning employee wages and payment of employee wages") (internal quotation marks omitted); *Tracy II*, 667 F. Supp. 2d at 246–47 (plaintiffs failed to state a claim against CEO, Board Chairman, and VP of Human Resources where they "offere[d] no supporting details to substantiate their belief [that defendants had authority over their employment conditions] other than [defendant's] job titles"), *adopting as modified Tracy I*, 2009 WL 3153150, at *5–6.

of amendment, etc.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, plaintiffs have not requested leave to file a Second Amended Complaint. To the contrary, they declined the Court's invitation, in its Order of April 4, 2016, to amend the FAC in response to Young's motion to dismiss. *See* Dkt. 109. In that Order, the Court advised plaintiffs that, pursuant to the Court's Individual Rule 3(B), "[n]o further opportunities to amend will ordinarily be granted." *Id.*

Accordingly, plaintiffs' claims against Young are dismissed with prejudice. *See Ritchie Capital Mgmt., L.L.C. v. Gen. Elec. Capital Corp.*, 821 F.3d 349, 351–52 (2d Cir. 2016) (no abuse of discretion to dismiss complaint with prejudice where plaintiff had not requested leave to amend and Individual Rule stated that no further opportunity to amend would ordinarily be granted); *Williams v. Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011) ("[T]he contention that the District Court abused its discretion in not permitting an amendment that was never requested [i]s frivolous." (internal quotation marks and citation omitted)).

## CONCLUSION

For the foregoing reasons, plaintiffs' claims against Young are dismissed with prejudice. The Clerk of Court is respectfully directed to close the motion pending at Dkt. 106 and to terminate Young as a defendant in this case.

SO ORDERED.

_____

Paul A. Engelmayer
United States District Judge

Dated: August 3, 2016
New York, New York